## HOMER E. HUBBELL v. LYSANDER OLMSTEAD.

### Contract. Administrator's Fees.

In consideration of a promise by the defendant to pay the plaintiff, who was a lawyer, extra for his services, the plaintiff undertook the administration of the estate of the defendant's father, which involved matters of complication and difficulty. *Held*, that this was a promise to make compensation beyond the statutory fees, for services beyond the ordinary services of an administrator, and such agreement was a valid contract.

The statutory prohibition and penalty for taking fees larger than is prescribed is applicable only to cases of officers such as sheriffs, or other persons serving process, where the statute provides the measure of fees to be taken, and prescribes by whom they are to be paid, but does not apply to the case of administrators.

BOOK ACCOUNT. The case was referred to an auditor who reported in substance that the plaintiff's account consisted of one item, as follows, to wit:

" Lysander and Osborne Olmstead to H. E. Hubbell Dr.

To extra services and counsel fees in the settlement of the estate of Ira Olmstead, from August, 1860 to October, 1861, including advice before letters of administration, and copy of my account furnished by request (as per your agreement) $100.00."

It appeared that Ira Olmstead of Fairfax, Vt., the father of the defendant, died in October, 1859, leaving a will, which was proved in the probate court, and his son Addison Olmstead was appointed executor, and acted as such until August, 1860, when he died leaving the estate of Ira Olmstead unsettled. The defendant and his brother, who were brothers of the deceased, Addison Olmstead, called at the office of Hubbell & Dewey, law partners in Fairfax, Vt., to see and consult with the plaintiff in relation to their father's estate, and requested the plaintiff to act as administrator on the same. The plaintiff declined and assigned as a reason that he could not afford to spend his time for the fees allowed by law to administrators. They replied that they were willing to pay him extra for his services, and would do so if he would consent to act. After some further talk on that and the following day, the plaintiff concluded to accept of the appointment of administrator in consideration of the defendant's promise to pay him extra for his services, and the defendant and his brother procured his appointment.

It appeared that there was some difficulty or controversy in relation to the rights of Ira Olmstead's widow, and in the summer of 1861, the defendant came to Fairfax with authority from the other legatees of Ira Olmstead to make a compromise of the controversy between their mother and the widow of Addison Olmstead, with a view of closing up the estate, and had several interviews and consultations with the plaintiff on the subject, and in September, 1861, a settlement was made with Addison Olmstead's widow, and as there seemed to be no difficulty in closing the administration on said estate, the plaintiff made out his administration account, but did not enter therein any item for

his services but showed his account to the defendant and told him he had made no charge for his services but thought he ought to have $100. and wanted the defendant to agree to that sum, which the defendant refused to do. The plaintiff then presented his account to the Judge of Probate and insisted that he ought to have $100. for his services by reason of the agreement to pay him extra, but the Judge of Probate refused to allow this sum and told the plaintiff that he could not recognize or take jurisdiction of this agreement, but that the plaintiff must look to the parties who agreed to pay him, and that he should not allow him any more than the law allows; and asked the plaintiff how much time he had spent, and the plaintiff replied he could not tell, but probably not less than ten nor more than twenty days; and the Judge of Probate afterwards added to said account by charging the plaintiff with interest on money in his *hands fifty dollars,* and credited him with twenty days' service as administrator, $25. and for expenses $25. making $50. and after striking the balance and finding the amount of said estate in the hands of the plaintiff, notified him to forward the amount so found in his hands, which request the plaintiff immediately complied with.

The auditor reported that he found it extremely difficult to determine the exact number of days spent by the plaintiff as he did not keep any account of it, and the plaintiff claimed that considerable portion of it was in looking after the notes and securities and collecting moneys, as well as frequent consultation with the defendant and others in relation to the estate and the rights of the widow therein.

The auditor found that by reason of the said agreement, so made by the defendant, the plaintiff was entitled to recover of the defendant over and above the sum allowed him by the probate court the sum of $46.87, with one year's interest on the sum, making $49.98. It appeared on the cross examination of the plaintiff that he stated that his charge included his whole services, both before and after he was appointed administrator.

It also appeared that Mr. Dewey, partner of the plaintiff, had no interest in the plaintiff's administration services; that services of this kind were not treated as partnership services.

The defendant excepted to the auditor's report.

The court, September Term, 1862, ALDIS, J., presiding, over-ruled the exceptions and rendered judgment *pro forma*, for the plaintiff to recover the sum reported by the auditor. Exceptions by the defendant.

*A. Soule, W. C. Wilson* and *James S. Burt*, for the defendant.

Judgment should have been rendered for the defendant; first, because the plaintiff has been fully paid for all the services he rendered by the allowance of the fifty dollars by the probate court.

Second, for the reason that the probate court, which alone has the power and right to allow extra compensation to adminis-trators, had taken jurisdiction of the case, and allowed the plain-tiff not only extra but extraordinary compensation for his services.

The agreement made by the defendant to pay the plaintiff extra for his services, as administrator, is void, and no action can be maintained upon it. C. S. ch. 115, § 16, p. 95; Chitty on Cont. p. 598; note on same page, and cases there cited. *Elkins* v. *Parkhurst,* 17 Vt. 105; *Hatch.*v. *Mann,* 15 Wend. 44.

The claim for advice and counsel before the plaintiff's ap-pointment, as administrator, belonged to Hubbell and Dewey.

*H. E. Hubbell, Dewey & Noble* and *H. R. Beardsley,* for the plaintiff, insisted that there was no adjudication upon this matter by the probate court. On the contrary the report finds that the judge expressly refused to take jurisdiction thereof, and his determination was right for his jurisdiction extended only to cases where the estate of Ira Olmstead was a party.

Any adjudication to have been a bar to this action must have been made by a tribunal of competent jurisdiction upon the same subject matter and between the same parties. That the contract for extra pay for services was not made illegal by any statute, see *Maynard et al.* v. *Briggs,* 26 Vt. 96; *Dunlap* v. *Curtis,* 10 Mass. 210. Nor was it opposed to sound policy.

BARRETT, J. This suit is brought to recover of the defendant on an agreement, that if the plaintiff would take upon himself the office of administrator of the estate of Ira Olmstead, the

father of the defendant, the defendant would pay him extra for his services. The report finds such an agreement, and that in consideration thereof, the plaintiff accepted said offce—the defendant procuring his appointment by the probate court. The probate court allowed, in settling the administration account, the fees fixed by statute, with an additional sum for expenses,—that court expressly declining to recognize, or take jurisdiction, or act upon the subject of said agreement. The auditor finds that, by virtue of said agreement the plaintiff is entitled to recover, above the sum allowed by the probate court, $46.87 and interest, making $49.98.

The main objection urged against the plaintiff's recovery of this sum is, that the fees of an administrator are fixed by statute, and there being a penalty provided for taking larger fees than is thus prescribed, the plaintiff has no right of action, both on the ground of the statutory provision, and because such a claim is contrary to public policy. We understand that statutory prohibition and penalty to be applicable only to cases of such officers as have the right to tax fees against some person chargeable, by statutory provision, with the payment thereof, such as sheriffs, or other persons serving process, where the statute provides the measure of fees to be taken, and prescribes by whom they are to be paid ; and other persons standing upon a similar ground under the law. We cannot understand how this could be applicable to administrators, who are not entitled to make a claim on any body whose personal duty it is to pay such fees—but whose compensation is to be fixed by the probate court, and is to be adjusted and satisfied in the accounting and final settlement of the estate. This provision of the statute was designed to prevent extortion by officers charged with certain duties, in virtue of their office. In other words, it was designed to render them compellable to perform the duties which the law visits upon the office, for the compensation provided, without exacting more as a condition upon which they will perform such duty.

We think all the cases to which that statute applies are distinguishable from this. The plaintiff was holding no office

which entitled the defendant to call upon, and require him to perform any duties. The defendant was interested in his father's estate, in the administration of which a man of more than ordinary qualifications was necessary, in order adequately to do the business needful to be done. It involved matters of complication and difficulty, to understand and manage which, the services of a lawyer would need to be invoked. Regarding the plaintiff as being peculiarly qualified, by his personal and professional character, for the needed services, as an inducement for him to undertake the duties of administrator, the defendant promised to pay him extra for his services. This was not in the character of *fees*, as meant in the statute ; but it was compensation beyond statutory fees, for services beyond the ordinary services of an administrator. It was securing, in the same man, what, but for the agreement made by the defendant, it would have been necessary to employ two or more men to do, and that too entirely at the expense of the estate ; it was securing the services of a man who could and did do the services both of an ordinary administrator and of professional adviser and manager, without additional charge to the estate.

That there is no positive or common law against such a·transaction seems to us beyond question. On this score, then, it cannot be said to be against public policy. The probability of such transactions being resorted to for the purpose of securing improper administration of estates, seems quite too remote to make it the ground of pronouncing a public policy against them. Unless then, there be a fatal vice in such a contract, either by reason of statutory prohibition, or of public policy, it must follow that the contract in this case possesses all the elements of a valid contract. In saying this, it is not meant that there might not be such a contract, made under such circumstances, and for such purposes, that the court would refuse to uphold it. But the contract in this case and the manner in which the plaintiff has discharged his duties under it, has furnished no ground for hesitating in giving it effect according to its terms.

With the other points made in the argument we had no difficulty. The judgment is affirmed.